934 F.2d 1171
 139 L.R.R.M. (BNA) 2849
 Charles F. RIVES, II; Marv A. Seurer; Ronald D. Pester;
Tom Hampleman; R.D. Griffin; John A. Cameron;
Marv Slusser; Gene Dudley, Petitioners,
v.
INTERSTATE COMMERCE COMMISSION; United States of America, Respondents,
Union Pacific Motor Freight Company, Intervenor.
 No. 89-9530.
 United States Court of Appeals,
Tenth Circuit.
 June 6, 1991.
 
 Alex M. Lewandowski of Dysart Taylor Penner Lay & Lewandowski, Kansas City, Mo. (Michael J. Ogborn of Heron, Burchette, Ruckert & Rothwell, Denver, Colo., of counsel), for petitioners.
 Laurence H. Schecker, Atty., I.C.C. (Robert S. Burk, Gen. Counsel, John J. McCarthy, Jr., Deputy Associate Gen. Counsel, I.C.C., James F. Rill, Asst. Atty. Gen., Catherine G. O'Sullivan and Andrea Limmer, Attys., Dept. of Justice, with him on the brief), Washington, D.C., for respondents.
 J. Michael Hemmer of Covington & Burling, Washington, D.C. (Paul A. Conley, Jr. and William G. Barr, Omaha, Neb., of counsel), filed a brief on behalf of intervenor Union Pacific Motor Freight Co.
 Before LOGAN and MOORE, Circuit Judges, and GREENE, District Judge.*
 LOGAN, Circuit Judge.
 
 
 1
 Eight former employees of the Union Pacific Motor Freight Company (petitioners) appeal a decision of the Interstate Commerce Commission (ICC) denying them labor protective conditions following consolidation of three major railroads. Petitioners contend that the ICC erred in determining that they were not entitled to mandatory labor protection under 49 U.S.C. Sec. 11347, and, alternatively, in failing to exercise its discretion to award labor protection benefits under 49 U.S.C. Sec. 11344.
 
 
 2
 This appeal arises out of the consolidation of three western railroads, the Union Pacific Railroad Company, the Missouri Pacific Railroad Company, and the Western Pacific Railroad Company, under the Union Pacific name. The ICC approved the consolidation pursuant to 49 U.S.C. Sec. 11343. Union Pac. Corp., 366 I.C.C. 459 (1982), aff'd sub nom. Southern Pac. Trans. Co. v. ICC, 736 F.2d 708 (D.C.Cir.1984), cert. denied, 469 U.S. 1208, 105 S.Ct. 1171, 84 L.Ed.2d 322 (1985). In conjunction therewith, the ICC approved Union Pacific's acquisition of Missouri Pacific's and Western Pacific's motor carrier subsidiaries. Union Pacific's motor carrier, the Union Pacific Motor Freight Company (UPMF), continued under the control of Union Pacific.
 
 
 3
 Petitioners were employees of UPMF at the time of the consolidation. UPMF, as Union Pacific's wholly-owned motor carrier subsidiary, was responsible for ramping and deramping trailers and containers to and from rail cars. Petitioners performed these ramping and deramping operations using "piggy packers," equipment capable of transporting the trailers and containers to and from staging areas. UPMF had ICC authority to perform regular trucking services, but was limited to auxiliary and supplemental rail service.
 
 
 4
 Pursuant to 49 U.S.C. Sec. 11347, the ICC imposed New York Dock labor protective conditions to protect railroad employees affected by the consolidation.[1] Petitioners, who were terminated following the consolidation, were denied New York Dock conditions, the ICC holding that petitioners were not entitled because they were not railroad employees. McPherson v. Union Pac. Motor Freight Co., I.C.C. Dec., Fin. Dkt. No. 30000, Sub-No. 45 (McPherson ) (Order of April 3, 1987). The ICC later reopened the proceeding to consider further evidence on whether petitioners were entitled to the New York Dock conditions it had imposed for the benefit of others or, alternatively, whether the ICC should use its discretionary authority to impose additional conditions for petitioners' benefit.[2] The ICC again denied petitioners relief, stating that its refusal to exercise its discretionary authority was because petitioners had failed to present any evidence or arguments in favor of the ICC exercising its discretion. McPherson, (Order of April 12, 1989).
 
 
 5
 * On appeal, petitioners first argue that the ICC erred in finding that they were not within the class of employees protected by the New York Dock conditions imposed for the benefit of those directly employed by the parent railroads. They contend that the ICC's decision, based solely on the identity of the employer, ignores the intent of employee protective conditions and goes against commission and court precedent. The ICC asserts that its decision is consistent with the Supreme Court's holding in Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), and that it acted with due deference to prior commission and court cases.
 
 
 6
 The statute governing labor protective conditions states, in pertinent part:
 
 
 7
 "When a rail carrier is involved in a transaction for which approval is sought under sections 11344 and 11345 or section 11346 of this title, the Interstate Commerce Commission shall require the carrier to provide a fair arrangement at least as protective of the interest of employees who are affected by the transaction as the terms imposed under this section before February 5, 1976, and the terms established under section 405 of the Rail Passenger Service Act (45 U.S.C. 565)."
 
 
 8
 49 U.S.C. Sec. 11347. In the instant case, the ICC construed Sec. 11347's mandatory protections as applying only to those "directly employed by a rail carrier," and, therefore, petitioners, "who were employed by nonrail subsidiaries of the rail carrier" were excluded. McPherson (Order of April 12, 1989, at 3).
 
 
 9
 When reviewing an agency's construction of a statute it administers, a court must follow a two-step analysis. First, if Congress has directly spoken to the precise question at issue and its intent is clear, "that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." Chevron, 467 U.S. at 842-43, 104 S.Ct. at 2781-82. If Congress has not addressed directly the precise question at issue, the reviewing court "does not simply impose its own construction on the statute.... Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." Id. at 843, 104 S.Ct. at 2782 (footnote omitted). In such a case, the agency's construction is permissible unless it is "arbitrary, capricious, or manifestly contrary to the statute." Id. at 844, 104 S.Ct. at 2782.
 
 
 10
 * Applying the first step in the Chevron analysis, we are satisfied that Congress has not unambiguously expressed an intent that employees of a motor carrier subsidiary are entitled to the mandatory protections afforded in Sec. 11347. Although Sec. 11347 requires protection for "employees who are affected by" an approved consolidation, the term "employees" is not defined in the Interstate Commerce Act, and we believe, from the words used, it is unclear whether Congress intended to include just those employed directly by the rail carrier or, more broadly, to include at least some employees of noncarrier subsidiary corporations whose jobs might be affected.
 
 
 11
 The legislative and statutory history of Sec. 11347 does not clear up this ambiguity. The ICC argues that the committee reports accompanying Sec. 11347, and the language from Sec. 11347's predecessor, 49 U.S.C. Sec. 5(2)(f), demonstrate Congress' intent that only those directly employed by a rail carrier are entitled to mandatory protection. The ICC points to the fact that Sec. 5(2)(f) used the phrase "railroad employees," directing the ICC to "require a fair and equitable arrangement to protect the interests of the railroad employees affected." 49 U.S.C. Sec. 5(2)(f) (repealed 1978). It also notes that the committee reports accompanying Sec. 11347 state that Sec. 5(2)(f) was recodified for "clarity" and that it was not intended to change the substance of the statute. See H.R.Rep. No. 1395, 95th Cong., 2d Sess. 8, 166, reprinted in 1978 U.S.Code Cong. & Admin.News 3009, 3016, 3175. We are not persuaded. Like Sec. 11347, Sec. 5(2)(f) did not define "railroad employees." Nowhere in the pre-1978 Act or the legislative history accompanying Sec. 11347 is the phrase "railroad employees" defined; Congress simply never addressed the issue presented in this case.
 
 
 12
 Two other circuits have considered the issue with opposite results. In Cosby v. ICC, 741 F.2d 1077 (8th Cir.1984), cert. denied, 471 U.S. 1110, 105 S.Ct. 2344, 85 L.Ed.2d 861 (1985), the court held that employees of an exclusive auxiliary-to-rail motor carrier were "employees" within the meaning of the Act because the motor carrier was "intimately tied to the railroad's main transportation function." Id. at 1081. In contrast, the court in Kansas City Southern Indus., Inc. v. ICC, 902 F.2d 423 (5th Cir.1990), held that former Sec. 5(2)(f) and the reports accompanying the 1978 recodification indicated clearly Congress' intent that Sec. 11347 did "not mandate labor protective conditions for employees of motor carrier subsidiaries of a merging railroad." Id. at 438. Of course, this court is not bound by the decisions of other circuits. We note that Cosby did not discuss the Chevron analysis. We note also that the motor carrier in Kansas City Southern was not restricted to auxiliary-to-rail services and received a majority of its revenues from nonrail-related activities. See Kansas City Southern, 902 F.2d at 438.
 
 B
 
 13
 Because we are satisfied that Congress has not unambiguously expressed its intent, we must decide under the second prong of Chevron whether the ICC's interpretation of Sec. 11347 is "a permissible construction of this statute." Chevron, 467 U.S. at 843, 104 S.Ct. at 2782. In making this determination, we are governed by the following standard:
 
 
 14
 "Th[e] view of the agency charged with administering the statute is entitled to considerable deference; and to sustain it, we need not find that it is the only permissible construction that [the agency] might have adopted but only that [the agency's] understanding of this very 'complex statute' is a sufficiently rational one to preclude a court from substituting its judgment for that of [the agency]."
 
 
 15
 Chemical Mfgrs. Ass'n v. Natural Resources Defense Council, Inc., 470 U.S. 116, 125, 105 S.Ct. 1102, 1107, 84 L.Ed.2d 90 (1985). See also Young v. Community Nutrition Inst., 476 U.S. 974, 981, 106 S.Ct. 2360, 2364-65, 90 L.Ed.2d 959 (1986).
 
 
 16
 Bound by this standard, we hold the ICC's interpretation of Sec. 11347--that only those directly employed by a rail carrier are entitled to mandatory labor protective conditions--a permissible and rational construction of the statute. The language in former Sec. 5(2)(f) mandates protection only for "railroad employees" and the legislative reports accompanying Sec. 11347 state that the recodification intended no substantive changes in existing law.[3] Restricting Sec. 11347's mandatory protections to rail carrier employees provides certainty and a logical limit to the scope of employees protected by Sec. 11347. Also, a reading as expansive as that petitioners request would render superfluous the ICC's use of discretionary authority under 49 U.S.C. Sec. 11344 to give labor protection for other employees affected by a consolidation.
 
 
 17
 Petitioners may be correct that a more rational interpretation of Sec. 11347 would focus on the nature of the work performed, not just the identity of the employer.[4] That does not make the ICC's interpretation unreasonable. And once we have determined that the agency's interpretation is reasonable, we may not disturb it on review. "[A] court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency." Chevron, 467 U.S. at 844, 104 S.Ct. at 2782. "The responsibilities for assessing the wisdom of such policy choices and resolving the struggle between competing views of the public interest are not judicial ones: 'Our Constitution vests such responsibilities in the political branches.' " Id. at 866, 104 S.Ct. at 2793 (citation omitted).[5]II
 
 
 18
 Finally, petitioners argue that the ICC erred in refusing to award protective conditions under its discretionary authority. This argument centers on 49 U.S.C. Sec. 11344(c), which permits the ICC, in its discretion, to provide labor protection for other persons affected by a rail consolidation.[6] In the instant case, the ICC expressly refused to consider using its discretion because petitioners failed to present any supportive arguments at the reopening proceeding, despite being invited to do so. See McPherson (Order of April 12, 1989, at 3). The ICC now contends that this failure precludes our consideration of this issue on appeal.
 
 
 19
 All issues a party contests on appeal must be raised at the appropriate time under the agency practice. United States v. L.A. Tucker Truck Lines, 344 U.S. 33, 37, 73 S.Ct. 67, 69, 97 L.Ed. 54 (1952). Failure of a party to present its contentions properly to the agency precludes appellate review. New Mexico Envtl. Improvement Div. v. Thomas, 789 F.2d 825, 835-36 (10th Cir.1986). A court may not substitute its judgment for that of the agency when "the agency has not had an opportunity to make a factual record or apply its expertise." Id. at 835.
 
 
 20
 In the instant case, all of the evidence presented by petitioners was directed to whether they were employees within the meaning of Sec. 11347. The petitioners' evidence sought to demonstrate the similarities between UPMF employees and Union Pacific employees. Petitioners contend that their employment comparison evidence presented in reference to Sec. 11344 was sufficient for the ICC to consider using its discretionary power. We disagree. The ICC reopened the proceedings to reconsider the issue of employment protective conditions for UPMF employees. The ICC expressly requested evidence and arguments on two issues:
 
 
 21
 "The [petitioners] ... may present evidence on whether they were railroad employees who qualify for mandatory labor protection under 49 U.S.C. 11347. They may also seek to demonstrate that the Commission should exercise its discretionary authority under 49 U.S.C. 11344(c) to provide protection for motor carrier employees."
 
 
 22
 McPherson (reopening order of August 10, 1987, at 2). The evidence submitted by petitioners was, in essence, the same as that submitted in the original proceeding when the only issue was whether they were railroad employees under Sec. 11347. No separate evidence or argument was directed at the availability of discretionary protection. Petitioners presented no evidence of financial hardship or a lack of marketable skills, which the ICC might consider relevant in deciding whether to grant discretionary benefits. Petitioners had the burden to present their case to the ICC for consideration and their failure to properly present the issue of discretionary protection to the ICC precludes our review.
 
 
 23
 AFFIRMED.
 
 
 
 *
 The Honorable J. Thomas Greene, United States District Judge for the District of Utah, sitting by designation
 
 
 [1]
 These conditions were fashioned by the ICC in New York Dock Ry., 360 I.C.C. 60 (1979), aff'd sub nom., New York Dock Ry. v. United States, 609 F.2d 83 (2d Cir.1979), and include such benefits as displacement or dismissal allowances and continuation of benefits for a specified period
 
 
 [2]
 The ICC reopened the proceedings at the request of Union Pacific. Before this request, seven former UPMF employees from Kansas City filed a petition for review with the Eighth Circuit, and seven former UPMF employees from Denver filed a petition for review with this court. The two cases were later consolidated and set for review by the Eighth Circuit. The case was transferred back to this court, however, apparently because six of the Kansas City petitioners, all who resided in the Eighth Circuit, entered into a settlement agreement with Union Pacific
 
 
 [3]
 The House report states:
 "Substantive change not intended --Like other codifications undertaken to enact into positive law all titles of the United States Code, this bill makes no substantive change in the law. It is sometimes feared that mere changes in terminology and style will result in changes in substance or impair the precedent value of earlier judicial decisions and other interpretations. This fear might have some weight if this were the usual kind of amendatory legislation where it can be inferred that a change of language is intended to change substance. In a codification statute, however, the courts uphold the contrary presumption: the statute is intended to remain substantively unchanged."
 H.R.Rep. No. 1395 at 9, reprinted in 1978 U.S.Code Cong. & Admin.News at 3018. In accord with this legislative history we stated, in Atchison, Topeka & Santa Fe Ry. v. Lennen, 732 F.2d 1495 (10th Cir.1981), that recodification of the Interstate Commerce Act in 1978 "was not intended to change the law" and that any substantive conflicts between the original language and the new language must be resolved "in favor of the original language." Id. at 1497.
 
 
 [4]
 Petitioners also argue that the ICC's interpretation of Sec. 11347 is unreasonable because it has in the past treated a railroad and its subsidiary as a single transportation system. Under this "single system doctrine," the ICC considers that a corporate family comprised of "a single, integrated transportation system, even though it is made up of several separate corporations ... to be, in effect, one carrier." Brotherhood of Ry. & Airline Clerks v. Burlington Northern, Inc., 671 F.2d 1085, 1089 (8th Cir.1982). Although the ICC has utilized this doctrine in determining that all rail employees of a railroad's subsidiaries were entitled to labor protection, see Pennsylvania R.R. Co., 347 I.C.C. 536, 546-47 (1974), we know of no cases in which the ICC has applied this doctrine to nonrail employees of a motor carrier subsidiary of a railroad
 
 
 [5]
 Because we hold that the ICC's interpretation of Sec. 11347 is reasonable, we need not consider petitioners' argument that the ICC erred in not considering evidence relating to their job descriptions and relationships with Union Pacific before making its determination. Under the ICC's "identity of the employer" standard, such evidence is not relevant in deciding whether petitioners are "railroad employees" entitled to labor protection. Therefore, it does not affect our determination of reasonableness. See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins., 463 U.S. 29, 43, 103 S.Ct. 2856, 2866-67, 77 L.Ed.2d 443 (1983)
 
 
 [6]
 Section 11344(c) states, in pertinent part:
 "The Commission shall approve and authorize a transaction under this section when it finds the transaction is consistent with the public interest. The Commission may impose conditions governing the transaction...."