PAUL'S BEAUTY COLLEGE, Plaintiff,

v.

UNITED STATES of America, and Richard W. Riley, Secretary, Department of Education, Defendant.

Civ. A. No. 94–1432–FGT.

United States District Court, D. Kansas.

April 14, 1995.

**1470**

Gary L. Ayers, Foulston & Siefkin, Wichita, KS, for United Schools of America, Inc.

Emily B. Metzger, Office of U.S. Atty., Wichita, KS, for Dept. of Educ. and U.S.

## MEMORANDUM AND ORDER

THEIS, District Judge.

This matter is before the court on the plaintiff's motion for preliminary injunction (Doc. 4). Plaintiff brings this action for declaratory and injunctive relief, seeking to reverse two administrative decisions of the Department of Education. These two decisions terminated the plaintiff's participation in federal student financial assistance programs under Title IV of the Higher Education Act of 1965, 20 U.S.C. § 1070 et seq., and ordered the plaintiff to repay the Department of Education some $476,000 for unauthorized disbursements of student financial assistance.

The defendants have filed a motion to dismiss, arguing that Paul's Beauty College is not a separate entity and thus lacks the capacity to sue or be sued. The plaintiff thereafter filed a motion for leave to amend the complaint to change the name of the plaintiff to "United Schools of America, Inc. d/b/a Paul's Beauty College." The Magistrate Judge granted the plaintiff's motion. Subsequent to that ruling, the defendants filed a timely response, arguing that the proposed amendment is insufficient to cure the deficiencies in the original complaint. The defendants' response notes that the proposed amended complaint simply adds "United Schools of America d/b/a Paul's Beauty College" to the case caption. In the text of the proposed amended complaint, United Schools of America is not identified as the party plaintiff in this action. United Schools of America is not mentioned in the text of the proposed amended complaint. No amended complaint has been filed. Until this matter is resolved by proper amendment to the complaint, Paul's Beauty College remains the named plaintiff. Defendants' motion to dismiss for lack of capacity remains pending and shall be granted unless the plaintiff files an appropriate amended complaint within ten (10) days of the date of this order.

The court has considered the evidence presented at the preliminary injunction hearing and the post-hearing briefs. For the reasons set forth herein, the plaintiff's motion for preliminary injunction shall be denied.

Paul's Beauty College (Paul's) is a proprietary vocational school located in Oklahoma City, Oklahoma. In 1986, the school was purchased by United Schools of America, Inc., which is owned by Frederick J. Laurino and located in Wichita, Kansas.

On January 9, 1992, the Department of Education issued a notice of intent to terminate Paul's eligibility to participate in student financial assistance programs under Title IV of the Higher Education Act of 1965, as amended. The department sought to terminate Paul's eligibility for the following reasons: (1) Paul's federal student loan fiscal year default rate for fiscal year 1989 exceeded 60%; (2) Paul's disbursed Title IV funds at an ineligible branch campus; and (3) Paul's failed to implement a pro rata refund policy. On March 1, 1993, the Department of Education amended the notice of intent to terminate to include, as an additional reason, that Paul's fiscal year 1990 default rate exceeded 65% and had not been reduced from 1989. Following administrative proceedings, an administrative law judge (ALJ) issued a decision finding that Paul's should be terminated from participation in federal student financial assistance programs for the above reasons. The Secretary of the Department of Education affirmed.

The second administrative decision arose from a final program review determination issued by the Department of Education. The most important finding in that determination was that Paul's had disbursed over $475,000 in student financial assistance at an ineligible campus. Paul's appealed the final program review determination. The ALJ found in favor of the Department of Education and, with the exception of certain loans for which the Department was seeking a double recovery, affirmed the final program review determination. The Secretary of the Department of Education affirmed the ALJ's decision.

Paul's seeks an order enjoining the enforcement of the two final decisions of the Secretary and requiring the Secretary to return Paul's to the status it held prior to the issuance of the final decisions. Paul's thus seeks reversal of the termination decision and reinstatement to the Title IV financial aid programs. Paul's further seeks reversal of the monetary assessment against it. Granting the injunction requested by Paul's would require the Department of Education to resume prospective federal funding to Paul's, obligate the Department to pay approximately $10,000 in reimbursement of funds advanced by Paul's to students, and prohibit the collection of the assessed program review liability.

■ To obtain preliminary injunctive relief, the moving party must establish:

(1) substantial likelihood that the movant will eventually prevail on the merits; (2) a showing that the movant will suffer irreparable injury unless the injunction issues; (3) proof that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) a showing that the injunction, if issued, would not be adverse to the public interest.

*Otero Savings & Loan Ass'n v. Federal Reserve Bank,* 665 F.2d 275, 278 (10th Cir. 1981). Since a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal. *SCFC ILC, Inc. v. Visa USA, Inc.,* 936 F.2d 1096, 1098 (10th Cir.1991). A preliminary injunction will be disfavored if it: (1) disturbs the status quo; (2) is mandatory as opposed to prohibitory; or (3) affords the movant substantially all the relief he may recover following trial on the merits. *Id.* at 1098–99. To prevail on a motion for preliminary injunction when the requested relief falls within one or more of these three categories, "the movant must show that on balance, the four factors weigh heavily and compellingly in his favor." *Id.* at 1099.

■ The relief sought by Paul's falls within all three of the disfavored categories. Paul's has been terminated from participating in federal student financial aid. An injunction would therefore alter the status quo. Further, the injunction would require the Department of Education to take affirmative action, specifically, to pay money to Paul's. Finally, the injunction would award Paul's substantially all the relief to which Paul's would be entitled if it succeeded on the merits. Therefore, Paul's must show that the four factors weigh heavily and compellingly in its favor before the court will issue the requested injunction.

The court first examines the alleged irreparable harm to Paul's if the injunction does not issue. Testimony was presented at the hearing to the effect that Paul's will go out of business if it cannot offer financial aid to its students. Paul's offered only generalities and speculation on this matter. No evidence was presented about the effect the termination of Paul's will have on United Schools of America, Inc., which owns several schools in addition to Paul's. As the Tenth Circuit recently noted, "it is not the purpose of a preliminary injunction to provide a business guarantee to any litigant." *Id.* at 1100 n. 9. Paul's has failed to make a clear showing of irreparable injury.

The court next addresses the potential harm to the Department of Education and to the public interest. Paul's allegedly had the second highest student loan default rates in the state of Oklahoma—62.9% for fiscal 1989; 68.1% for fiscal 1990. Exhibits submitted by Paul's indicate that Paul's student loan default rates have remained above 50%—55.8% for fiscal 1991; 57.9% for fiscal 1992. *See* attachments to Plaintiff's Supplemental

Memorandum in Support of Motion for Preliminary Injunction (Doc. 19). These default rates continue to exceed the rates for which termination is authorized. 34 C.F.R. § 668.15(b)(1).

The potential harm to the defendants and the public if the injunction is issued is clear and sizeable. Enjoining the termination decision would mandate the resumption of federal funding to Paul's. Enjoining the program review determination would prevent the defendants from collecting the $475,000 debt. Denying the injunction would result in no clear harm to the public. The defendants and the public would be harmed by resuming the flow of federal tax dollars to an institution that has demonstrated an inability to comply with the governing regulations and that has already subjected the public to a large potential liability for defaulted student loans. Paul's has failed to meet its burden of clearly establishing that its threatened injury outweighs the damage the proposed injunction may cause the defendant and that the injunction, if issued, would not be adverse to the public interest.

Finally, the court turns to whether Paul's can establish a substantial likelihood of success on the merits. Paul's argues that, if it has established the other three requirements for the issuance of an injunction (i.e., irreparable harm, balancing of harms, public interest), a "modified version" of the success on the merits test is to be applied. Under this test, "it will ordinarily be enough that the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful as to make them a fair ground for litigation and thus for more deliberate investigation." *Koerpel v. Heckler,* 797 F.2d 858, 866 (10th Cir.1986) (quoting *Lundgrin v. Claytor,* 619 F.2d 61, 63 (10th Cir.1980)). Since Paul's has failed to establish the other three requirements for the issuance of an injunction, the modified success on the merits test shall not be applied.

Further, the court has serious doubts about the applicability of the modified test in the present case. The Tenth Circuit has more recently noted:

Particularly in cases where the requested preliminary injunction alters the status quo, is mandatory in nature, or will grant the movant a significant part of the relief it seeks at trial, the movant will ordinarily find it difficult to meet its heavy burden of showing that the four factors, on balance, weigh heavily and compellingly in its favor, without showing a substantial likelihood of success on the merits.

*SCFC ILC,* 936 F.2d at 1101 n. 11. The court shall, therefore, consider whether the plaintiff has shown a substantial likelihood of success on the merits.

■■■ This case is brought under the Administrative Procedure Act, 5 U.S.C. § 701 et seq. Under that Act, the court shall affirm the agency action unless it is found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A). A reviewing court may -not substitute its judgment for that of the agency. *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 823–24, 28 L.Ed.2d 136 (1971); *Franklin Savings Ass'n v. Director, Office of Thrift Supervision,* 934 F.2d 1127, 1142 (10th Cir.1991), *cert. denied,* 503 U.S. 937, 112 S.Ct. 1475, 117 L.Ed.2d 619 (1992). When reviewing a decision concerning matters lying within the agency's field of expertise, a presumption of procedural and substantive regularity attaches. *Franklin Savings,* 934 F.2d at 1147.

One of the grounds for terminating Paul's was its default rates for students obtaining guaranteed student loans to attend the school. The regulations provide that the Secretary may initiate proceedings to limit, suspend or terminate eligibility to participate in Title IV programs if the institution's cohort default rates (defined in 20 U.S.C. § 1085(m)) exceed certain specified percentages for given fiscal years. 34 C.F.R. § 668.15(b)(1) (1991). Paul's cohort default rates of 62.9% for fiscal year 1989 and 68.1% for fiscal year 1990 exceed the thresholds contained in the regulation.

Once the hearing official finds that the fiscal year default rate exceeds the level specified, the sanction sought shall be imposed unless "the institution demonstrates that it has acted diligently to implement the

default reduction measures described in appendix D to this part." 34 C.F.R. § 668.90(a)(3)(iii). Appendix D to 34 C.F.R. Part 668 contains a number of default reduction measures to be employed by institutions with high student loan default rates. Only one default reduction measure is in dispute—the requirement that the institution implement a pro rata refund policy for students who drop out without completing their studies.

Paul's asserts that it did act diligently to implement the default reduction measures—specifically the pro rata refund policy—described in Appendix D to 34 C.F.R. Part 668. The regulations place the burden of proof upon the institution to demonstrate implementation of a pro rata refund policy. 34 C.F.R. § 668.90(a)(3)(iii) and App. D. Paul's did have in place a refund policy. The ALJ found, however, that Paul's refund policy did not comply with the regulations governing pro rata refunds.

Pro rata refund is defined in the regulations as:

a refund by the school of not less than that portion of the tuition, fees, room and board, and other charges assessed the student by the school equal to the portion of the period of enrollment for which the student has been charged that remains on the last day of attendance by the student,
. . .

less certain administrative fees and equipment charges. 34 C.F.R. § 682.606(c)(1). For programs measured in clock hours, such as offered by Paul's:

"the portion of the period of enrollment for which the student has been charged that remains" is determined by dividing the total clock hours comprising the period of enrollment for which the student has been charged into the number of clock hours remaining to be completed by the student in that period as of the last recorded day of attendance by the student.

*Id.* § 682.606(c)(3). The ALJ interpreted this regulation to require the inclusion of absent hours within the hours remaining to be completed. Paul's refund policy was based on the clock hours still available to a student under his or her contract with Paul's.

The ALJ rejected Paul's refund policy, noting that the concept of remaining available time only applies to programs measured in credit hours. *Id.* § 682.606(c)(2).

The agency's interpretation of its own regulations is entitled to great deference and will be rejected only if it is "unreasonable, plainly erroneous, or inconsistent with the regulation's plain meaning." *Lewis v. Babbitt,* 998 F.2d 880, 882 (10th Cir.1993). "Even if an agency's interpretation is not the only one permitted by the language of the rule, courts must respect it if it is at least a reasonable interpretation." *City of Aurora v. Hunt,* 749 F.2d 1457, 1462 (10th Cir.1984). As long as the agency's interpretation of its own regulations does not violate the constitution or federal statute, it must be given controlling weight. *Stinson v. United States,* — U.S. —, —, 113 S.Ct. 1913, 1919, 123 L.Ed.2d 598 (1993).

The ALJ's interpretation of the pro rata refund regulations, while not the only one permitted by the language of the regulation, is a reasonable interpretation. It is entitled to controlling weight. The court does not find a substantial likelihood of success on the merits on the issue of the diligent implementation of a pro rata refund policy.

Paul's also takes issue with the manner in which the Secretary has calculated cohort default rates. Paul's argues that the Secretary failed to carry out a statutory mandate to exclude certain "improperly serviced" loans from the calculation of cohort default rates. Paul's argument is based on a provision in the Higher Education Act which is no longer in effect.

Prior to amendment in 1993, the Higher Education Act required the Secretary, in calculating default rates, to "exclude any loan which, because of improper servicing or collection, would result in inaccurate or incomplete calculation of the cohort default rate." 20 U.S.C. § 1085(m)(1)(B) (1988 & Supp. IV). This section was amended in 1993 to provide that "the Secretary shall ... in considering appeals with respect to cohort default rates ... exclude any loans which, due to improper servicing or collection, would, as demonstrated by an institution's timely appeal to the

Secretary, result in an inaccurate or incomplete calculation of such cohort default rate." 20 U.S.C. § 1085(m)(1)(B) (Supp.1994). The amendment also requires the Secretary to take all necessary steps to ensure that the institution obtains a representative sampling of loan servicing records for the purpose of appeal. *Id.* § 1085(a)(3). The amendments were made effective for the determination of default rates for fiscal 1989 and beyond, and the appeals of those rates. Pub.L. No. 103–208, § 5(b)(8).

The opportunity to appeal the default rates has been made available to Paul's. The defendants assert that Paul's has waived its opportunity to appeal the default rates for fiscal 1989 and beyond. Paul's contends that an appeal at present would be premature because the Secretary has not provided Paul's with requested documentation. Under either version of events, judicial review is unavailable to Paul's.

■ The plaintiff is ordinarily required to pursue relief which is available from the administrative agency prior to proceeding to the courts. Until the plaintiff exhausts that avenue, suit is premature. *Reiter v. Cooper,* — U.S. —, —, 113 S.Ct. 1213, 1220, 122 L.Ed.2d 604 (1993). It is undisputed that Paul's has not availed itself of the appeal mechanism recently established. Since Paul's has failed to exhaust administrative remedies with respect to this issue, judicial review is precluded. *Rivera–Zurita v. INS,* 946 F.2d 118, 120 & n. 2 (10th Cir.1991).

■ If, as argued by the defendants, Paul's has failed to take advantage of an available appeal, such might constitute a waiver. The issues raised by a party on appeal must be raised at the appropriate time before the agency. The failure of a party to presents its contentions before the agency precludes review. *Rives v. Interstate Commerce Commission,* 934 F.2d 1171, 1176 (10th Cir.1991), *cert. denied,* 503 U.S. 959, 112 S.Ct. 1559, 118 L.Ed.2d 207 (1992).

A basis for both the termination decision and the program review determination was that for two years Paul's disbursed federal student financial assistance at an ineligible location. Paul's stipulated before the ALJ that the location at issue was not eligible prior to February 11, 1992. Paul's disbursed financial aid at that location for two years prior to eligibility. Based on this stipulation, Paul's has not shown a substantial likelihood of success on the merits on this issue.

■ Paul's also argues that it was denied procedural due process in the program review proceeding. It is undisputed that Paul's failed to submit the appropriate pleadings, including a brief, in this proceeding. The regulations authorize the ALJ to issue a decision against a party based on the party's failure to comply with the briefing schedule. 34 C.F.R. § 668.117(c)(3). An agency's interpretation of its own procedural rules is entitled to great deference. *Bar MK Ranches v. Yuetter,* 994 F.2d 735, 738 (10th Cir.1993). The ALJ acted within his authority in issuing a decision against Paul's based on Paul's failure to submit the required briefs.

**IT IS BY THE COURT THEREFORE ORDERED** that plaintiff shall file an amended complaint properly identifying the appropriate party plaintiff within ten (10) days of the date of this order.

**IT IS FURTHER ORDERED** that plaintiff's motion for preliminary injunction (Doc. 4) is hereby denied.