Edgar SEARCY, Plaintiff,

v.

Charles SIMMONS and Robert D. Hannigan, Defendants.

Civil Action No. 97–3421–KHV.

United States District Court, D. Kansas.

Aug. 13, 1999.

David J. Waxse, Paul W. Rebein, Brent E. Dryer, Shook, Hardy & Bacon, L.L.P., Overland Park, KS, for Edgar Searcy.

Edgar Searcy, Hutchinson, KS, pro se.

Hsing Kan Chiang, Office of Attorney General, Topeka, KS, for Charles Simmons, Robert D. Hannigan.

John M. Knox, Lawrence, KS, for Mike Woods.

## MEMORANDUM AND ORDER

VRATIL, District Judge.

Plaintiff brings suit under 42 U.S.C. § 1983, alleging that defendants violated his constitutional rights by reducing his inmate incentive level after he refused to enter into a recommended rehabilitation program at Hutchinson Correctional Facility. This matter comes before the Court on plaintiff's "[*Motion For Preliminary Injunction And Temporary Restraining Order*]" (Doc. # 48) filed September 14, 1998,[1] and plaintiff's *Motion For Leave To File Reply Out Of Time* (Doc. # 98) filed June 25, 1999. For reasons stated more fully below, plaintiff's motion for preliminary injunction is overruled.[2]

### Facts[3]

Plaintiff is an inmate at Hutchinson Correctional Facility ["HCF"], serving a 65 month sentence after pleading nolo contendere, in January 1997, to charges of sexual exploitation of a child. As part of plaintiff's rehabilitation program, officials of the Kansas Department of Corrections ["KDOC"] determined that plaintiff should be placed in the Sexual Abuse Treatment Program ["SATP"] at HCF. In order to participate in the SATP, an inmate must sign an "Admission of Responsibility" form. The form requires the inmate to list all past behavior that may have constituted a sex offense, regardless whether the inmate was ever arrested, charged or convicted as a result of the conduct. An inmate who participates in the SATP must also submit to polygraph and penile plethysmograph examinations which are videotaped.[4]

On February 5, 1997, the SATP coordinator at HCF interviewed plaintiff for the program which was scheduled to begin March 2, 1997. During the interview plaintiff refused to fill out and sign the "Admission of Responsibility" form. Because of his refusal, KDOC officials did not allow him to participate in the SATP. Furthermore, because of his nonparticipation, they reduced plaintiff's incentive level from Level 3 to Level 1.

Internal Management Policy and Procedure 11–101 ["IMPP 11–101"] governs inmate privileges and incentives, and distinguishes several levels of privileges. At Level 1, an inmate receives limited activities, limited expenditures, limited incentive

1. Plaintiff's supplemental memorandum purports to support both the present motion and his first *Motion For Preliminary Injunction/T.R.O.* (Doc. # 9) filed December 15, 1997. The Court, however, has already denied the first motion. *See Order* (Doc. # 10) filed December 19, 1997.

2. In reaching its determination on this matter the Court has reviewed plaintiff's *Reply In Support Of Motion For Preliminary Injunction/Temporary Restraining Order. See* plaintiff's *Motion For Leave To File Reply Out Of Time* (Doc. # 98) filed June 25, 1999 (Exh. 1 attached thereto). The Court therefore sustains plaintiff's motion for leave to file his reply out of time.

3. The Court gleans the following facts mostly from plaintiff's motion and first amended complaint. When necessary, the Court relies on defendants' *Martinez* report for further background facts. *See Martinez v. Aaron,* 570 F.2d 317 (10th Cir.1978). For purposes of the motion for preliminary injunction, however, the Court construes all facts in plaintiff's favor.

4. A penile plethysmograph examination registers and assesses variations in blood flow to the subject's penis during exposure to explicit visual and/or aural depictions of rape and molestation.

Defendants deny that they videotape the polygraph and plethysmograph examinations. The SATP "Videotape Consent" form which plaintiff has submitted as an exhibit to his motion indicates only that "videotaping will be used .... within my psychotherapy group for therapeutic and educational purposes ...." Plaintiff's *Reply In Support Of Motion For Preliminary Injunction/Temporary Restraining Order* (Exh. E attached thereto).

Defendants also deny that they use either visual or explicit depictions of sexual activities in plethysmograph examinations. The record reveals that plethysmograph examinations expose participants to aural "sexual material [which] will be extremely explicit and will involve many types of sexual activity." *Id.* (Exh. F attached thereto).

pay, and only limited access to personal property. To move to a higher level, an inmate must participate in recommended programs for at least 120 days. IMPP 11–101 states that an inmate's privilege level should be automatically reduced to Level 1 if he refuses to participate in recommended programs.

Plaintiff alleges that because of this reduction he lost privileges, personal property and incentive pay, and suffered physical and emotional injury. Plaintiff also alleges that defendants have denied him "good time credits" which he would otherwise receive if he had signed the "Admission of Responsibility" form. Plaintiff seeks a preliminary injunction to prevent defendants from withholding privileges and benefits or penalizing him for refusing to provide potentially incriminating information related to past sexual behavior or offenses, and to prevent defendants from withholding privileges and benefits or penalizing him for not participating in polygraph or plethysmograph examinations. Plaintiff also seeks a preliminary injunction to compel defendants to restore him to the privilege level that he held before he refused to sign the "Admission of Responsibility" form.

### Preliminary Injunction Standard

■ The purpose of a preliminary injunction is "to preserve the status quo pending the outcome of the case." *Tri–State Generation & Transmission Ass'n, Inc. v. Shoshone River Power, Inc.*, 805 F.2d 351, 355 (10th Cir.1986). A preliminary injunction is a drastic and extraordinary remedy, and courts do not grant it as a matter of right. *See Paul's Beauty College v. United States*, 885 F.Supp. 1468, 1471 (D.Kan.1995); 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure: Injunctions* § 2948, at 128–29 & nn. 3, 6–7 (1995). The Court must deny injunctive relief if the moving party fails to establish any requisite element, *see Packerware Corp. v. Corning Consumer Prods. Co.*, 895 F.Supp. 1438, 1446 (D.Kan.1995), and the moving party must establish that it is

entitled to injunctive relief by clear and unequivocal proof. *See Penn v. San Juan Hosp., Inc.*, 528 F.2d 1181, 1185 (10th Cir. 1975); *Paul's Beauty College*, 885 F.Supp. at 1471.

■ In order to obtain a preliminary injunction, plaintiff must establish that (1) he will suffer irreparable injury unless the injunction issues; (2) the threatened injury outweighs whatever damage the proposed injunction may cause defendants; (3) the injunction, if issued, will not be adverse to the public interest; and (4) there is a substantial likelihood that plaintiff will eventually prevail on the merits. *See Resolution Trust Corp. v. Cruce*, 972 F.2d 1195, 1198 (10th Cir.1992); *Tri–State*, 805 F.2d at 355 (citing *Lundgrin v. Claytor*, 619 F.2d 61, 63 (10th Cir.1980)); *Heatron, Inc. v. Shackelford*, 898 F.Supp. 1491, 1498 (D.Kan.1995).

### Analysis

### I. Plaintiff Is Not Substantially Likely To Prevail On The Merits

Plaintiff claims that he is entitled to a preliminary injunction because defendants' conduct violates his constitutional right against self-incrimination and his constitutional right to the free exercise of religion and privacy and bodily integrity. The Court finds that plaintiff is not likely to prevail on any of his claims, however, and that he therefore is not entitled to the injunctive relief which he seeks.

### A. Self–Incrimination

Plaintiff argues that by requiring him to complete an "Admission of Responsibility" form, the SATP compels him to reveal potentially incriminating information about his sexual history and thus violates his Fifth Amendment rights against self-incrimination. Plaintiff claims that his "refusal to provide this incriminating information was the sole motivating factor for his loss of privileges and denial of good time benefits," *see Supplemental Memorandum In Support Of Motion For Preliminary*

*Injunction/Temporary Restraining Order* (Doc. # 83) filed May 7, 1999, at 10, and concludes that defendants violated his Fifth Amendment right by penalizing him for invoking that right. *See, e.g., United States v. Oliveras,* 905 F.2d 623, 626–28 (2d Cir.1990); *United States v. Perez–Franco,* 873 F.2d 455 (1st Cir.1989); *Estelle v. Smith,* 451 U.S. 454, 468, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981) (Fifth Amendment guarantees person right to remain silent unless he chooses to speak of his own will and to "suffer no penalty ... for such silence." (citation omitted)). *See also Lile v. McKune,* 24 F.Supp.2d 1152 (D.Kan.1998) (application of IMPP 11–101 to inmate who refuses to participate in SATP violates inmate's right against self-incrimination).

█ The Court addressed this exact issue in its recent opinion in *Johnston v. Simmons,* 45 F.Supp.2d 1220 (D.Kan.1999) (sustaining defendant's motion for summary judgment); *see also Johnston v. Simmons,* 45 F.Supp.2d 1220 (D.Kan.1999) (overruling plaintiff's motion for preliminary injunction). As here, plaintiff in *Johnston* argued that application of IMPP 11–101 violated his rights against self-incrimination. The Court rejected the argument in light of *Ohio Adult Parole Auth. v. Woodard,* 523 U.S. 272, 118 S.Ct. 1244, 140 L.Ed.2d 387 (1998).

In *Woodard,* a death row inmate was forced to either confess his guilt or face a reduced chance at clemency. The United States Supreme Court rejected his Fifth Amendment claim, finding that the possible adverse consequences were not sufficient compulsion for purposes of the Fifth Amendment because the inmate retained his right to choose, and any incrimination was therefore voluntary. *See id.,* 118 S.

Ct at 1252–53.[5] Plaintiff in *Woodard* did not face a possible loss of privileges and benefits but, rather, a possible loss of life. If such a choice is not sufficient compulsion to make incriminating statements involuntary, the application of IMPP 11–101—even in its most severe application—could hardly be sufficient.

Because plaintiff in this case retained the right to choose whether to enter the SATP, it is unlikely that he will prevail on his claim that the program violates his right against self-incrimination, even if IMPP 11–101 causes a reduction in privileges. *See Woodard,* 118 S.Ct. at 1252. As in *Johnston,* the Court reiterates that the grant of clemency is speculative, while the application of IMPP 11–101 is practically certain. The speculative nature of clemency, however, is not enough to convince the Court that IMPP 11–101 presents a more compulsive force when an inmate decides whether to incriminate himself.

In summary, the eligibility requirements for the voluntary SATP do not violate plaintiff's right against self-incrimination, despite the reduction in privileges caused by his nonparticipation in the program. Accordingly, plaintiff is not likely to prevail on his Fifth Amendment claim, and he therefore is not entitled to injunctive relief with respect to the SATP "Admission of Responsibility" eligibility requirement.

## B. Free Exercise of Religion

Plaintiff contends that he holds sincere religious beliefs[6] which prohibit his exposure to sexually explicit materials like those used in the plethysmograph examinations. He therefore argues that the

---

**5.** The Court opined:

we do not think that respondent's testimony at a clemency interview would be "compelled" within the meaning of the Fifth Amendment. It is difficult to see how a voluntary interview could "compel" respondent to speak. He merely faces a choice quite similar to the sorts of choices that a criminal defendant must make in the course of criminal proceedings, none of

which has ever been held to violate the Fifth Amendment.

118 S.Ct. at 1252.

**6.** *See, e.g., Snyder v. Murray City Corp.,* 124 F.3d 1349, 1352 (10th Cir.1997) (to state valid free exercise claim, plaintiff must exercise or protect sincerely held religious belief) (subsequent history omitted).

SATP requirement that he submit to a plethysmograph examination violates his freedom of religion under the First Amendment to the United States Constitution.

█ The Supreme Court examines four factors to determine whether a prison regulation which restrains an inmate's sincerely held religious beliefs is reasonable: (1) whether the regulation has a logical connection to legitimate governmental interests invoked to justify it; (2) whether alternative means of exercising his religion remain open to the inmate; (3) the impact that accommodation of the inmate's asserted right would have on other inmates, prison personnel and allocation of prison resources generally; and (4) whether there is an alternative that fully accommodates the inmate's rights at de minimis cost to valid penological interests. *See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 350–52, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987); *Turner v. Safley*, 482 U.S. 78, 89–90, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987).

Plaintiff cites limited authority to establish that sex abuse treatment programs which require plethysmograph examinations have no logical connection to legitimate governmental interests. *See Nelson v. Jones*, 781 P.2d 964, 968 (Alaska 1989) (plethysmographs "often give false results, both positive and negative," and "doubts" concerning plethysmograph are "well-founded"), *cert. denied*, 498 U.S. 810, 111 S.Ct. 44, 112 L.Ed.2d 20 (1990); *Dutchess County Dep't of Soc. Servs. v. Mr G., Mrs. G.*, 534 N.Y.S.2d 64, 71, 141 Misc.2d 641, 651 (1988) (plethysmograph is "device with, at best, questionable professional recognition"). Rehabilitation, of course, is a legitimate penological objective, *see O'Lone*, 482 U.S. at 348, 107 S.Ct. 2400, and sex abuse treatment programs which use plethysmography logically fall within that objective. *See, e.g., Lile*, 24 F.Supp.2d at 1164 ("the challenged [plethysmograph] procedure, and the related operation of 'incentive' policy IMPP 11–101, are both rationally related to the legitimate penological goal of rehabilitation of sex offenders, and reasonable enough to satisfy the review required under *Turner v. Safley*."). *See also Berthiaume v. Caron*, 142 F.3d 12, 17 (1st Cir.1998) (plethysmograph examination is standard practice in pedophile and sex offender treatment programs, and is "widely used in the scientific community for the treatment of pedophilia.").

█ In light of the requirement that, "in reviewing prison administrators' decisions, [courts] must refrain from usurping the role of prison administrators while protecting the constitutional rights of the inmates," *Mitchell v. Maynard*, 80 F.3d 1433, 1443 (10th Cir.1996) (citing *Procunier v. Martinez*, 416 U.S. 396, 405, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974), *overruled on other grounds, Thornburgh v. Abbott*, 490 U.S. 401, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989)), the Court cannot conclude that plaintiff is substantially likely to establish that the SATP plethysmograph examination requirement serves no legitimate correctional goal. The scant authority which plaintiff cites does not convince the Court that he is substantially likely to prevail on this issue.

To the extent that the second factor (whether alternative means of exercising his religion remain open to plaintiff) has any application to these particular facts, it weighs in defendants' favor. Plaintiff retains the right to choose not to participate in the sexual abuse treatment program, thereby avoiding exposure to the plethysmograph examination's sexually explicit materials. Because plaintiff is not "required to participate in an activity that is proscribed by the tenets of his religion," *see Supplemental Memorandum In Support Of Motion For Preliminary Injunction/Temporary Restraining Order* at 13, he has an alternative means of exercising his religion.

The Court also rejects plaintiff's argument that excusing him from the SATP's plethysmograph examination requirement will not adversely affect other inmates, prison personnel and allocation of prison

resources generally. Defendants quite logically fear that allowing plaintiff to dictate the terms and conditions of his own psychological rehabilitation could adversely affect the institution, guards and other inmates. Allowing plaintiff to define the scope of sexual abuse treatment could detract from prison officials' ability to provide uniform and effective rehabilitative treatment for plaintiff and other sex offenders. To excuse plaintiff and other inmates from the SATP's requirements could effectively remove any rehabilitative content from the treatment program, rendering it meaningless.

Further, to allow plaintiff to avoid the SATP plethysmograph examination requirement, while maintaining the requirement for all other participants, could cause resentment and discontent among other participants, thus frustrating prison officials' goal of rehabilitation and treatment of other convicted sex offenders. *See, e.g., Palmigiano v. Baxter,* 487 F.2d 1280, 1283 (1st Cir.1973) ("[t]here is nothing more corrosive to the fabric of a [prison] than a feeling among [inmates] that they are being treated unfairly.") (subsequent history omitted). Defendants might face a flood of pleas from inmates demanding the attendant privileges and benefits of rehabilitative programs, but without having to participate in rehabilitative activity.[7]

The fourth factor is whether any alternative will fully accommodate plaintiff's rights at de minimis cost to valid penological interests. The alternative which plaintiff suggests—that defendants waive the plethysmograph examination requirement—is no alternative at all. As noted, excusing plaintiff from the plethysmograph examination requirement and yet allowing him to participate in the SATP (and thereby maintain his privileges) could adversely affect other inmates and the rehabilitation efforts of KDOC officials. Plaintiff's proposed "alternative" would not have a de minimis cost to valid penological interests.

█ Plaintiff questions whether the plethysmograph examination is necessary to rehabilitate sex offenders, and whether it has scientific validity. *See, e.g., Dutchess,* 534 N.Y.S.2d at 71, 141 Misc.2d at 651 (plethysmograph is "device with, at best, questionable professional recognition"). Because the record reveals conflicting authority on this question, *see, e.g., Berthiaume,* 142 F.3d at 17; *Lile,* 24 F.Supp.2d at 1164, and in light of the requirement that the Court refrain from usurping the role of prison administrators in reviewing their decisions, *see Mitchell,* 80 F.3d 1433, the Court cannot conclude that plaintiff is substantially likely to prevail on this question. Even if he were to prevail, the remaining three factors still weigh in defendants' favor.

More generally, should plaintiff otherwise become eligible to participate in the SATP, it is simply incongruous to conclude that defendants will violate plaintiff's free exercise rights by "forcing" him to participate in the plethysmograph examination. The plethysmograph examination is part of a voluntary treatment program, and plaintiff retains his right to choose to participate in the SATP. Any effect that the plethysmograph examination requirement (or any other requirement) might have on his religious beliefs would be the result not of compulsion, but of his own choice to participate in the treatment program. *See, e.g., Kirkpatrick v. Simmons,* Case No. 96-3140-MLB (*Report And Recommendation* at 8 n. 4) (because inmate "had the option of whether or not to participat[e] in the [SATP]" court declined to

---

7. Although the court in *Lile* dismissed prison officials' "broad and speculative" concern regarding a "floodgate of inmate litigation," Lile v. McKune, Case No. 95-3266-DES (Doc. # 94) filed April 23, 1996, at 5-6, KDOC has indeed experienced several inmate lawsuits challenging the SATP and loss of privileges. *See, e.g., Johnston v. Simmons,* No. Civ. A. 97-

3354-KHV; *Kirkpatrick v. Simmons,* Case No. 96-3140-MLB; *Searcy v. Simmons,* No. Civ. A. 97-3421-KHV; *Stansbury v. Hannigan,* 265 Kan. 404, 960 P.2d 227 (1998), *cert. denied sub nom Hannigan v. Stansbury,* —— U.S. ——, 119 S.Ct. 629, 142 L.Ed.2d 567 (1998); *Garner v. Nelson,* 25 Kan.App.2d 394, 963 P.2d 1242 (1998).

reach inmate's constitutional claims). Finally, the mere fact that application of IMPP 11–101 causes a reduction in plaintiff's privileges does not persuade the Court that plaintiff's choice is not truly voluntary. For the Court's analysis of this issue, *see* part C, *infra.*

In summary, plaintiff is not substantially likely to prevail on his free exercise claim, and therefore he is not entitled to injunctive relief with respect to the SATP plethysmograph examination requirement.

### C. Rights To Privacy And Bodily Integrity; Freedom From Unreasonable Searches And Seizures

■ Plaintiff argues that he has a substantive due process right under the Fourteenth Amendment to refuse plethysmograph and polygraph examinations which KDOC officials require as part of the SATP. *See, e.g., Rochin v. California,* 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952) (forced stomach pumping violates inmate's due process rights); *Washington v. Harper,* 494 U.S. 210, 222, 110 S.Ct. 1028, 108 L.Ed.2d 178 (1990) (although inmate has liberty interest in avoiding unwanted administration of antipsychotic drugs under Due Process Clause, prison policy authorizing nonconsensual treatment of mentally ill prisoner with antipsychotic drugs did not unduly infringe inmate's liberty interest); *White v. Napoleon,* 897 F.2d 103, 112–13 (3d Cir.1990) (recognizing inmates' substantive due process right to be free from retaliation for exercising right to be informed of medical treatment; and noting that prison officials "may compel a prisoner to accept treatment when prison officials, in the exercise of professional judgment, deem it necessary to carry out valid medical or penological objectives").

In the alternative, plaintiff contends that plethysmograph and polygraph examinations are unjustified intrusions into his bodily integrity which violate his Fourth Amendment rights against unreasonable searches and seizures. *See, e.g., Winston v. Lee,* 470 U.S. 753, 105 S.Ct. 1611, 84 L.Ed.2d 662 (1985) (compelled surgical intrusion to retrieve bullet from robbery suspect's body violates Fourth Amendment).

The gist of plaintiff's argument is that invasive plethysmograph and polygraph examinations lack scientific validity and reliability,[8] and defendants' purported interests in requiring SATP participants to undergo the examinations—in particular their interest in safeguarding institutional security, *e.g., Bell v. Wolfish,* 441 U.S. 520, 558, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979)— are not sufficiently compelling to justify the intrusion.

■ The Court rejects plaintiff's argument. The Court reiterates that plaintiff has the choice to participate in the SATP. Because his participation in the program is voluntary, it is irrelevant whether the plethysmograph and polygraph examinations would be sufficiently intrusive so as to infringe his privacy rights. Cases which pertain to forced medical treatment and stomach pumping are therefore inapposite. Moreover, the mere fact that application of IMPP 11–101 causes a reduction in plaintiff's privileges does not persuade the Court that plaintiff's choice is not truly voluntary. Prison officials' withdrawal or limitation of privileges to promote rehabilitative measures falls within the expected perimeters of an inmate's court-imposed sentence. *See Sandin v. Conner,* 515 U.S. 472, 485, 115 S.Ct. 2293, 132 L.Ed.2d 418

---

8. *See, e.g., Nelson v. Jones,* 781 P.2d at 968 (plethysmographs "often give false results, both positive and negative," and "doubts" concerning plethysmograph are "well-founded"); *Dutchess,* 534 N.Y.S.2d at 71, 141 Misc.2d 641 (plethysmograph is "device with, at best, questionable professional recognition."); *United States v. Hall,* 805 F.2d 1410, 1416 (10th Cir.1986) (results of polygraph examinations inadmissible because "reliability of such tests is yet in doubt"), *abrogation recognized by United States v. Call,* 129 F.3d 1402 (10th Cir.1997) (district court must apply *Daubert* analysis to proffered polygraph evidence).

(1995). The evaluation of penological objectives is committed to the considered judgment of prison administrators, "who are actually charged with and trained in the running of the particular institution under examination." *Bell*, 441 U.S. at 562, 99 S.Ct. 1861. *See also O'Lone*, 482 U.S. at 348, 107 S.Ct. 2400 ("limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives—including deterrence of crime, rehabilitation of prisoners, and institutional security").

Even if the plethysmograph and polygraph examinations were compulsory, the Court would still balance plaintiff's liberty interest against the legitimate objectives of KDOC officials. *See, e.g., Kirkpatrick*, Case No. 96–3140–MLB (*Report And Recommendation* at 8) ("an inmate's liberty interest in refusing treatment is not absolute; it is qualified by the correctional system's legitimate objectives of rehabilitation, safety and security.") (citing *Harper*, 494 U.S. at 221, 110 S.Ct. 1028). In light of the Court's analysis of plaintiff's free exercise claim, *supra.*, the Court concludes that the legitimate objectives of KDOC officials—e.g., rehabilitating convicted sex offenders and treating SATP participants equally—strike a fair balance with plaintiff's liberty interests. The Court is not in a position to question defendants' favored means of accomplishing their objectives, and the utility and validity of plethysmograph and polygraph examinations is a matter of debate. The Court therefore concludes that plaintiff is not substantially likely to prevail on his Fourth and Fourteenth Amendment claims.

## II. Other Factors Do Not Merit Injunctive Relief

Even taking into account the three remaining elements which plaintiff must establish to obtain injunctive relief, plaintiff is not entitled to an injunction.

Plaintiff cites no evidence of irreparable injury and the record contains no evidence that defendants have violated plaintiff's constitutional rights in applying the policy to him. Without citing record evidence, plaintiff argues that "[c]learly, Plaintiff would be irreparably harmed if he is forced to endure Defendants' unconstitutional acts" during the course of this litigation. Plaintiff's mere arguments, however, do not constitute evidence of irreparable injury. Plaintiff also cites case law which holds that when an alleged deprivation of a constitutional right is involved, no further showing of irreparable injury is necessary. *See, e.g., Beerheide v. Zavaras*, 997 F.Supp. 1405, 1410 (D.Colo.1998). As noted, plaintiff is not likely to prevail on the merits of any of his constitutional claims. Accordingly, mere allegations that defendants deprived plaintiff of his constitutional rights are insufficient to show irreparable injury. The Court therefore finds that plaintiff will suffer no irreparable injury in the absence of the injunctive relief which he seeks.

Nor does the balance of hardships favor plaintiff. While he will continue to suffer the consequences of IMPP 11–101, this hardship is not significant unless defendants have applied IMPP 11–101 unconstitutionally. Absent a substantial question on that issue, an injunction would needlessly burden defendants' discretion to manage the prison as they see fit. *See Vinson v. McKune*, 265 Kan. 422, 426, 960 P.2d 222, 225 (1998). Further, as noted above, excusing plaintiff from the SATP requirements would encourage other inmates to seek exemptions from the requirements, a result which would be detrimental to KDOC officials' legitimate rehabilitation goals.

Finally, plaintiff has failed to show that an injunction will serve the public interest. He argues that the public interest is served by preventing constitutional violations, but again, he has not shown that he is substantially likely to prevail on his constitutional claims. If defendants' actions do not appear to violate the law, the public interest is not served by an injunction.

The Court further notes that the preliminary injunctive relief which plaintiff

seeks—reinstatement to his previous privilege level and its attendant privileges, and admittance into the SATP (minus the "Admission of Responsibility" requirement and plethysmograph and polygraph examination requirements)—would disturb the status quo and afford him substantially all the relief which he seeks. In such a situation, the Tenth Circuit views preliminary injunctive relief with disfavor, and plaintiff must meet the heavy burden of showing that the four prerequisites to preliminary injunctive relief weigh heavily and compellingly in his favor. *See SCFC ILC, Inc. v. Visa USA, Inc.,* 936 F.2d 1096, 1098–99 (10th Cir.1991). In light of the foregoing analysis, the Court concludes that plaintiff has not met that burden.[9]

In summary, because plaintiff has failed to establish any of the four required elements for a preliminary injunction, his request must be overruled.

**IT IS THEREFORE ORDERED** that plaintiff's "[*Motion For Preliminary Injunction And Temporary Restraining Order* ]" (Doc. # 48) filed September 14, 1998, be and hereby is **OVERRULED.**

**IT IS FURTHER ORDERED** that plaintiff's *Motion For Leave To File Reply Out Of Time* (Doc. # 98) filed June 25, 1999, be and hereby is **SUSTAINED.**

---

9. To the extent that plaintiff also seeks the "extraordinary and drastic remedy" of a temporary restraining order, the Court likewise finds that plaintiff has not "by clear showing, carrie[d] his burden of persuasion." *West v. Derby Unified School District # 260,* 23 F.Supp.2d 1220, 1221–22 (D.Kan.1998).