**Edgar SEARCY, Plaintiff,**

v.

**Charles SIMMONS and Robert D. Hannigan, Defendants.**

**No. CIV.A.97–3421–KHV.**

United States District Court, D. Kansas.

April 21, 2000.

Paul W. Rebein, Matthew J. Wiltanger, Brent E. Dyer, Matthew C. Miller, Shook, Hardy & Bacon, L.L.P., Overland Park, KS, David J. Waxse, Kansas City, MO, for plaintiff.

Edgar Searcy, Hutchinson, KS, pro se.

Hsing Kan Chiang, Office of Attorney General, Topeka, KS, Timothy G. Madden, Topeka, KS, for defendants.

## MEMORANDUM AND ORDER

VRATIL, District Judge.

Plaintiff brings suit under 42 U.S.C. § 1983, alleging that defendants violated his constitutional rights by reducing his inmate incentive level after he refused to enter into a sex abuse rehabilitation program at Hutchinson Correctional Facility. This matter comes before the Court on *Defendants' Motion For Summary Judgment Or In The Alternative Judgment on The Pleadings* (Doc. # 135) and *Plaintiff's Motion For Summary Judgment* (Doc. # 138), both filed November 5, 1999. For reasons stated below, defendants' motion for summary judgment is sustained and plaintiff's motion for summary judgment is overruled.

### Summary Judgment Standards

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Vitkus v. Beatrice Co.*, 11 F.3d 1535, 1538–39 (10th Cir.1993). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. A "genuine" factual

dispute requires more than a mere scintilla of evidence. *Id.* at 252, 106 S.Ct. 2505.

The moving party bears the initial burden of showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Hicks v. City of Watonga,* 942 F.2d 737, 743 (10th Cir.1991). Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l, Inc. v. First Affiliated Secs., Inc.,* 912 F.2d 1238, 1241 (10th Cir.1990); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Bacchus Indus., Inc. v. Arvin Indus., Inc.,* 939 F.2d 887, 891 (10th Cir.1991). The nonmoving party may not rest on its pleadings but must set forth specific facts. *Applied Genetics,* 912 F.2d at 1241.

"[W]e must view the record in a light most favorable to the parties opposing the motion for summary judgment." *Deepwater Invs., Ltd. v. Jackson Hole Ski Corp.,* 938 F.2d 1105, 1110 (10th Cir.1991). Summary judgment may be granted if the nonmoving party's evidence is merely colorable or is not significantly probative. *Anderson,* 477 U.S. at 250–51, 106 S.Ct. 2505. "In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial." *Conaway v. Smith,* 853 F.2d 789, 794 (10th Cir.1988). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251–52, 106 S.Ct. 2505.

### *Factual Background*

The following facts are undisputed, deemed admitted or where disputed, viewed in the light most favorable to plaintiff.

In January 1997, plaintiff entered a plea of nolo contendere to charges of sexual exploitation of a child. He is now serving a 65 month sentence at Hutchinson Correction Facility ["HCF"]. As part of his rehabilitation program, the Kansas Department of Corrections ["KDOC"] determined that plaintiff should be placed in the Sexual Abuse Treatment Program ["SATP"].[1] As a prerequisite to the SATP, prisoners are required to complete and sign an "Admission of Responsibility" form. The form requires an inmate to list all past behavior that may have constituted a sex offense, regardless whether the inmate was ever arrested, charged or convicted as a result of the conduct. Inmates who refuse to fill out the "Admission of Responsibility" form are considered to have "refused to participate" in the SATP and suffer an immediate loss of privileges. At the beginning of the program, SATP participants are informed that information which they provide during the program is not entirely confidential. If a participant identifies additional victims of sexual offenses who are children, SATP staff members are required to report those offenses to proper authorities. *See* K.S.A. § 38-1522. An inmate who participates in the SATP must also submit to penile plethysmograph and polygraph examinations.[2]

---

1. A prisoner who is assigned to the SATP receives his first opportunity to actively participate in the program some 18 months before his projected release date.

2. A penile plethysmograph examination registers and assesses variations in blood flow to the subject's penis during exposure to explicit visual and/or aural depictions of rape and molestation. The examination requires a participant to undress from the waist down, sit in a chair, attach a metal gauge to his penis, attach galvanic skin sensors to his finger tips and listen to recordings of graphic and deviant sexual episodes. The participant may stop the plethysmograph at any time. The results of the test are not shared outside the program. Participants can thwart the effectiveness of the test by using distraction tech-

Inmates who refuse to participate in these examinations can be terminated from the program, resulting in a loss of privileges.

In January 1996, KDOC implemented Internal Management Policy and Procedure ["IMPP"] 11–101, which was in effect at all times relevant to this lawsuit. IMPP 11–101 governs inmate privileges and incentives, and distinguishes several levels of privileges. At level 1, an inmate receives limited activities, limited expenditures, limited incentive pay, and only limited access to personal property. To move to a higher level, an inmate must participate in recommended programs for at least 120 days. IMPP 11–101 states that a given inmate's privilege level should be automatically reduced to level 1 if he refuses to participate in recommended programs. Prisoners who are assigned to the SATP but do not participate in it are denied any further "good time" credits.

On February 5, 1998, the SATP coordinator at HCF interviewed plaintiff for the SATP which was scheduled to begin on March 2, 1998. During the interview, however, plaintiff refused to complete and sign the "Admission of Responsibility" form. KDOC officials therefore refused to let him to participate in the SATP and reduced his incentive level from level 3 to level 1. They also removed personal items from plaintiff's cell. Plaintiff got a chance to designate a person to whom his property should be sent, but he declined to name anyone. Shortly thereafter, HCF officials sent plaintiff's property to his out-of-state relatives. Plaintiff does not expect his property to be returned.

Plaintiff claims that defendants have violated his constitutional right against self-incrimination and his constitutional rights to freedom of speech, free exercise of religion, privacy, bodily integrity, and due process. On August 13, 1999, the Court denied plaintiff's motion for a preliminary injunction. *See Searcy v. Simmons*, 68 F.Supp.2d 1197 (D.Kan.1999). Plaintiff and defendants now seek summary judgement on each of plaintiff's claims.

### Analysis

#### I. Self–Incrimination

Plaintiff claims that defendants violated his Fifth Amendment rights against self-incrimination. In particular, plaintiff argues that by requiring him to complete an "Admission of Responsibility" form, the SATP compels him to reveal potentially incriminating information about his sexual history. Plaintiff contends that his refusal to provide incriminating information was the motivating factor for his loss of privileges and denial of good time benefits, and he concludes that defendants violated his Fifth Amendment right by penalizing him for invoking that right. *See Lile v. McKune*, 24 F.Supp.2d 1152 (D.Kan.1998) (application of IMPP 11–101 to inmate who refuses to participate in SATP violates inmate right against self-incrimination); *see also Estelle v. Smith*, 451 U.S. 454, 468, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981) (Fifth Amendment guarantees right to remain silent and to "suffer no penalty ... for such silence"). Although prison officials may not penalize an inmate who invokes his Fifth Amendment right, "prison officials may constitutionally deny benefits to a prisoner who, by invoking his privilege against self incrimination, refuses to make statements necessary for his rehabilitation as long as their denial is based on the prisoner's refusal to participate in his re-

niques to suppress erectile response and using internal fantasy to stimulate erectile response. In fact, some SATP participants at HCF have admittedly falsified their plethysmograph results.

In preparation for the polygraph examination, participants are expected to answer many personal questions about their sexual background and activities, including ques-

tions about past sexual acts that are neither deviant nor illegal. Before the polygraph examination, SATP participants are expected to fill out an abbreviated sexual history in which they detail past sexual offenses. Part of the purpose of the polygraph examination is to attempt to become more "honest" about their sexual offenses.

habilitation and not his invocation of his privilege." *Doe v. Sauer,* 186 F.3d 903, 906 (8th Cir.1999); *see Johnson v. Baker,* 108 F.3d 10, 12 (2d Cir.1997); *Asherman v. Meachum,* 957 F.2d 978, 980–83 (2d Cir.1992).

In denying plaintiff's motion for a preliminary injunction, and in a separate opinion in *Johnston v. Simmons,* D. Kan. No. 97–3354–KHV, *Memorandum And Order* (Doc. # 31) filed May 27, 1999, the Court has rejected plaintiff's self-incrimination argument. *See Searcy,* 68 F.Supp.2d at 1200–01. As here, plaintiff in *Johnston* argued that application of IMPP 11–101 violated his rights against self-incrimination. The Court rejected the argument in light of *Ohio Adult Parole Auth. v. Woodard,* 523 U.S. 272, 118 S.Ct. 1244, 140 L.Ed.2d 387 (1998). In *Woodard,* a death row inmate was forced to either confess his guilt or face a reduced chance of clemency. The United States Supreme Court rejected his Fifth Amendment claim, finding that because the inmate could choose whether to confess, any incrimination was voluntary; the fact that silence had possibly adverse consequences did not compel a confession for purposes of the Fifth Amendment. *See id.* at 285–86, 118 S.Ct. 1244. The Court opined:

> [W]e do not think that respondent's testimony at a clemency interview would be "compelled" within the meaning of the Fifth Amendment. It is difficult to see how a voluntary interview could "compel" respondent to speak. He merely faces a choice quite similar to the sorts of choices that a criminal defendant must make in the course of criminal proceedings, none of which has ever been held to violate the Fifth Amendment.

*Id.* at 286, 118 S.Ct. 1244; *see Kirkpatrick v. Simmons,* D. Kan. Case No. 96–3140–MLB, *Report And Recommendation* (Doc. # 25) filed June 12, 1998 at 8 n. 4 (because inmate had option whether to participate in SATP, court declined to reach constitutional claims). In *Woodard,* plaintiff did not face a possible loss of privileges and benefits, but rather a possible loss of life. If such a choice is not sufficient compulsion to make incriminating statements involuntary, the application of IMPP 11–101—even in its most severe application—could hardly be sufficient.

■ Because plaintiff in this case retained the right to choose whether to enter the SATP, he cannot claim that the program violates his right against self-incrimination even if IMPP 11–101 causes him a loss of privileges. *See Woodard,* 523 U.S. at 286, 118 S.Ct. 1244. The Court noted in *Johnston* that the grant of clemency is speculative, while the application of IMPP 11–101 is practically certain. The speculative nature of clemency, however, does not convince the Court that IMPP 11–101 presents a more compulsive situation when an inmate decides whether to incriminate himself.

In sum, the eligibility requirements for the voluntary SATP do not violate plaintiff's right against self-incrimination. Accordingly, the Court sustains defendants' motion for summary judgment on this claim.

## II. Freedom of Speech

Plaintiff claims that his First Amendment rights include a right to refrain from speaking, and that defendants acted unlawfully when they punished him for asserting his right to remain silent when he declined to sign the Admission of Responsibility form. *See Pacific Gas & Elec. Co. v. Public Utils. Comm'n,* 475 U.S. 1, 10–11, 106 S.Ct. 903, 89 L.Ed.2d 1, (1986); *see also Wooley v. Maynard,* 430 U.S. 705, 714, 97 S.Ct. 1428, 51 L.Ed.2d 752 (1977) (First Amendment right to freedom of thought includes both "the right to speak freely and the right to refrain from speaking at all") (citing *West Virginia State Board of Education v. Barnette,* 319 U.S. 624, 633–34, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943)). The Supreme Court recently stated, however, that "[t]hough the First Amendment creates a strong presumption

against punishing protected speech even inadvertently, the balance need not always be struck in that direction." *Waters v. Churchill,* 511 U.S. 661, 670, 114 S.Ct. 1878, 128 L.Ed.2d 686 (1994).

Because the SATP is a voluntary program, the Court takes initial exception to the argument that defendants acted unlawfully when they "punished" plaintiff for asserting his right to remain silent. As explained above, because an inmate has a choice whether to participate, he is not compelled to sign the Admission of Responsibility. If the prisoner is not required to speak, his First Amendment right to refrain from speaking is not implicated.

Also, plaintiff has not alleged that by refusing to sign the Admission of Responsibility form, he has expressed any idea other than a simple refusal to participate. Plaintiff cites *Pacific Gas* and *Wooley* for the proposition that by law the government may not compel an individual to speak. In both cases, however, plaintiff was forced to communicate an expression—which plaintiff disagreed—for the benefit of a third person. Here, plaintiff is not mandated to speak on behalf of another individual.

Plaintiff apparently alleges that his speech consisted of refusing to say "yes" to requests that he sign an Admission of Responsibility form. Plaintiff fails to allege, however, any communication of an idea. *See Bee v. Greaves,* 744 F.2d 1387, 1393–94 (10th Cir.1984) (First Amendment protects communication of ideas), *cert. denied,* 469 U.S. 1214, 105 S.Ct. 1187, 84 L.Ed.2d 334 (1985). The Court is not convinced that plaintiff's refusal to participate in the SATP, whether communicated through speech or through conduct, merits First Amendment scrutiny. As the Supreme Court has noted, "[i]t is possible to find some kernel of expression in almost every activity a person undertakes—for example, walking down the street or meeting one's friends at the shopping mall—but such a kernel is not sufficient to bring the activity within the protection of the First Amendment." *City of Dallas v. Stanglin,* 490 U.S. 19, 25, 109 S.Ct. 1591, 104 L.Ed.2d 18 (1989). To determine whether plaintiff's refusal to participate implicates his right to free speech, we must determine whether the refusal constituted "activity [which] was sufficiently imbued with elements of communication." *Spence v. Washington,* 418 U.S. 405, 409, 94 S.Ct. 2727, 41 L.Ed.2d 842 (1974).

It is not enough to simply show that plaintiff intended to communicate an idea. "We cannot accept the view that an apparently limitless variety of conduct can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea." *United States v. O'Brien,* 391 U.S. 367, 376, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968). For the First Amendment to apply, plaintiff must show both (1) an intent to convey a particularized message by particular conduct and (2) based on the surrounding circumstances, a great likelihood that prison officials would understand plaintiff's message. *See Spence,* 418 U.S. at 411, 94 S.Ct. 2727. Plaintiff does not allege that he intended to communicate any message to prison officials by refusing to participate in the SATP program. Even if the Court assumes that plaintiff meant to convey deep opposition to the legality of the program, his method of communicating this message—simply refusing to participate—does not suggest a great likelihood that prison officials would so understand his refusal to participate. The Court therefore finds that plaintiff's refusal to participate in the SATP program did not implicate his right to free speech. Defendants are entitled to summary judgment on plaintiff's freedom of speech claim.

### III. Free Exercise of Religion

Plaintiff contends that he holds sincere religious beliefs which prohibit his exposure to sexually explicit materials like those used in plethysmograph examinations. *See, e.g., Snyder v. Murray City*

*Corp.*, 124 F.3d 1349, 1352 (10th Cir.1997) (to state valid free exercise claim, plaintiff must exercise or protect sincerely held religious belief), *vacated on other grounds*, 159 F.3d 1227 (10th Cir.), *cert. denied*, 526 U.S. 1039, 119 S.Ct. 1334, 143 L.Ed.2d 499 (1999). He argues that by requiring that he submit to a plethysmograph examination, the SATP program violates his freedom of religion under the First Amendment. Plaintiff also claims that his sincerely held religious beliefs prohibit him from making false statements; that he did not commit the crime for which he is currently incarcerated; and that admitting to that crime, by signing the Admission of Responsibility form, would therefore violate his sincerely held religious beliefs.

█ Again, plaintiff's constitutional challenges are without merit because his participation in the SATP is voluntary. Both the plethysmograph examination and the Admission of Responsibility form are part of a voluntary treatment program, and plaintiff retains his right to choose whether to participate. If plaintiff elects to participate, any negative religious consequences result not from compulsion but from plaintiff's own choice. *See supra* text, Part I. Finally, the mere fact that application of IMPP 11–101 causes a reduction in plaintiff's privileges does not create a genuine issue of material fact regarding the voluntariness of plaintiff's choice.

In the alternative, the Court finds that plaintiff's freedom of religion claim must fail as a matter of law because IMPP 11–101 is a reasonable regulation. The Supreme Court examines four factors to determine the reasonableness of a prison regulation which restrains an inmate's sincerely held religious beliefs: (1) whether the regulation has a logical connection to legitimate governmental interests invoked to justify it; (2) whether alternative means of exercising his religion remain open to the inmate; (3) the impact that accommodation of the inmate's asserted right would have on other inmates, prison personnel and allocation of prison resources generally; and (4) whether there is an alternative that fully accommodates the inmate's rights at de minimis cost to valid penological interests. *See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 350–52, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987); *Turner v. Safley*, 482 U.S. 78, 89–90, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). The Court examines these factors with respect to both the plethysmograph test and the Admission of Responsibility form requirements.

The Court finds that the first factor favors defendants. Rehabilitation is of course a legitimate penological objective, *see O'Lone*, 482 U.S. at 348, 107 S.Ct. 2400, and sex abuse treatment programs which use plethysmography and Admission of Responsibility forms logically fall within that objective. *See, e.g., Lile*, 24 F.Supp.2d at 1164 ("the challenged [plethysmograph] procedure, and the related operation of 'incentive' policy IMPP 11–101, are both rationally related to the legitimate penological goal of rehabilitation of sex offenders, and reasonable enough to satisfy the review required under *Turner v. Safley* "); *Berthiaume v. Caron*, 142 F.3d 12, 17 (1st Cir.1998) (plethysmograph examination is standard practice in pedophile and sex offender treatment programs and is widely used in scientific community for treatment of pedophilia). *But cf. Nelson v. Jones*, 781 P.2d 964, 968 (Alaska 1989) (plethysmographs "often give false results, both positive and negative," and doubts concerning plethysmograph are "well-founded"), *cert. denied*, 498 U.S. 810, 111 S.Ct. 44, 112 L.Ed.2d 20 (1990); *Dutchess County Dep't of Soc. Servs. v. Mr. G.*, 141 Misc.2d 641, 534 N.Y.S.2d 64, 71 (N.Y.1988) (plethysmograph is "device with, at best, questionable professional recognition"). While protecting the constitutional rights of the inmates, however, the courts must refrain from usurping the role of prison administrators. *Mitchell v. Maynard*, 80 F.3d 1433, 1443 (10th Cir. 1996) (citing *Procunier v. Martinez*, 416

U.S. 396, 405, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974), *overruled on other grounds, Thornburgh v. Abbott,* 490 U.S. 401, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989)). Consistent with these authorities, the Court concludes that plaintiff cannot establish that no legitimate correctional goal is served by the plethysmograph examination and Admission of Responsibility form requirements.

The second factor addresses whether alternative means of exercising his religion remain open to plaintiff. To the extent that this factor has any application to this case, it weighs in favor of defendants. Plaintiff can decide not to participate in the SATP and thus eliminate any religious dilemma. Because plaintiff is not required to participate in an activity that violates the tenets of his religion, he has an alternative means of exercising his religion, *i.e.* non-participation.

The Court also rejects plaintiff's argument that excusing him from the requirements of a plethysmograph examination and Admission of Responsibility form will have no adverse effect on other inmates, prison personnel and allocation of prison resources generally. Allowing plaintiff to dictate the terms and conditions of his psychological rehabilitation would adversely affect the institution, guards and other inmates. Permitting plaintiff to define the scope of sexual abuse treatment would detract from the ability of prison officials to provide uniform and effective rehabilitative treatment for plaintiff and other sex offenders. Further, to allow plaintiff to avoid certain SATP requirements, while maintaining those requirements for other participants, would undoubtedly cause resentment and discontent among other participants, thus frustrating legitimate goals of rehabilitation and treatment of other convicted sex offenders. *See, e.g., Palmigiano v. Baxter,* 487 F.2d 1280, 1283 (1st

Cir.1973) (noting that nothing is more corrosive to the fabric of a prison than a feeling among inmates that they are being treated unfairly) (subsequent history omitted). Defendants might face a flood of pleas from inmates, demanding the privileges and benefits of rehabilitative programs without the attendant requirement that they actually participate in rehabilitative activity.[3] No reasonable jury could find otherwise.

The fourth factor is whether any alternative will fully accommodate plaintiff's rights at a de minimis cost to valid penological interests. The alternative which plaintiff suggests—that defendants waive the plethysmograph examination requirement and Admission of Responsibility—is no alternative at all. The Court has already found that defendants have a valid penal interest in rehabilitation, and eliminating these requirements—which are reasonably related to rehabilitation—does not present a de minimis cost to valid penological interests. *See Lile,* 24 F.Supp.2d at 1164.

Plaintiff questions whether the plethysmograph examination is necessary to rehabilitate sex offenders and whether it has scientific validity. Because the record reveals conflicting authority on this question, *see, e.g., Berthiaume,* 142 F.3d at 17; *Lile,* 24 F.Supp.2d at 1164, and in light of the requirement that the Court refrain from usurping the role of prison administrators in reviewing their decisions, *see Mitchell,* 80 F.3d at 1433, the Court concludes that plaintiff cannot prevail on this issue. Even if he were to prevail, the remaining three factors still weigh in defendants' favor.

As a de minimis alternative to the Admission of Responsibility form, plaintiff suggests that defendants allow him to acknowledge his need for treatment or state his commitment to the program. It is

---

**3.** This is not the only case in which inmates have attacked the SATP and related loss of privileges. *See, e.g., Johnston v. Simmons,* D. Kan. No. Civ. A. 97–3354–KHV; *Kirkpatrick v. Simmons,* D. Kan. No. 96–3140–MLB;

*Stansbury v. Hannigan,* 265 Kan. 404, 960 P.2d 227, *cert. denied,* 525 U.S. 1060, 119 S.Ct. 629, 142 L.Ed.2d 567 (1998); *Garner v. Nelson,* 25 Kan.App.2d 394, 963 P.2d 1242 (1998).

obvious, however, that to excuse plaintiff from signing the Admission of Responsibility form and yet allow him to participate in the SATP would adversely affect other inmates and the rehabilitation efforts of KDOC officials. The analysis is not different from the analysis whether plaintiff should be allowed to forgo the plethysmograph examination. Furthermore, as stated above, the Court must refrain from usurping the role of prison administrators in reviewing their decisions. *See id.*

In summary, the Court finds that SATP requirements which involve the plethysmograph test and the Admission of Responsibility form do not violate plaintiff's free exercise of religion. Defendants are therefore entitled to summary judgment on this claim.

## IV. Rights To Privacy And Bodily Integrity; Freedom From Unreasonable Searches And Seizures

Plaintiff argues that under the Fourteenth Amendment he has a substantive due process right to refuse plethysmograph and polygraph examinations which KDOC officials require as part of the SATP. *See, e.g., Washington v. Harper,* 494 U.S. 210, 222, 110 S.Ct. 1028, 108 L.Ed.2d 178 (1990) (due process clause gives inmate liberty interest in avoiding unwanted administration of antipsychotic drugs); *Rochin v. California,* 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952) (forced stomach pumping violates inmate due process rights). In the alternative, plaintiff contends that plethysmograph and polygraph examinations are unjustified intrusions into his bodily integrity which violate his Fourth Amendment rights against unreasonable searches and seizures. *See, e.g., Winston v. Lee,* 470 U.S. 753, 105

S.Ct. 1611, 84 L.Ed.2d 662 (1985) (compelled surgical intrusion to retrieve bullet from robbery suspect's body violates Fourth Amendment).

In support of both arguments, plaintiff maintains that the invasive plethysmograph and polygraph examinations lack scientific validity and reliability,[4] and that defendants' purported interests in requiring SATP participants to undergo the examinations—in particular their interest in safeguarding institutional security, *e.g., Bell v. Wolfish,* 441 U.S. 520, 558, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979)—are not sufficiently compelling to justify the intrusion.

■ The Court rejected this argument when it denied plaintiff's motion for a preliminary injunction, *see Searcy,* 68 F.Supp.2d at 1204–05, and it remains unpersuaded. The Court reiterates that plaintiff has the choice whether to participate in the SATP. Because any participation is voluntary, it does not matter whether the examinations would otherwise be so intrusive as to infringe plaintiff's rights of privacy. Cases which pertain to forced medical treatment and stomach pumping are inapposite. Moreover, the fact that application of IMPP 11–101 causes a reduction in plaintiff's privileges if he does not participate does not create a genuine issue of material fact whether plaintiff's choice is truly voluntary. Prison officials' withdrawal or limitation of privileges to promote rehabilitative measures falls within the expected perimeters of an inmate's court-imposed sentence. *See Sandin v. Conner,* 515 U.S. 472, 485, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). The evaluation of penological objectives is committed to the considered judgment of prison administrators, "who are actually charged with and trained in the running of

4. *See, e.g., United States v. Hall,* 805 F.2d 1410, 1416 (10th Cir.1986) (results of polygraph examinations inadmissible because "reliability of such tests is yet in doubt"); *Nelson v. Jones,* 781 P.2d at 968 (plethysmograph has questionable reliability); *Dutchess County Dept. of Social Services v. Mr. G,* 141 Misc.2d 641, 534 N.Y.S.2d 64, 71 (same). *But see*

*Pool v. McKune,* 267 Kan. 797, 806, 987 P.2d 1073, 1079 (1999) ("While program administrators acknowledge that plethysmography is not an exact science and one without much of a track record, they testified that plethysmograph is one way to determine arousal patterns and identify deviant sexual behavior cycles.").

the particular institution under examination." *Bell*, 441 U.S. at 562, 99 S.Ct. 1861; *see O'Lone*, 482 U.S. at 348, 107 S.Ct. 2400 (limitations on exercise of constitutional rights arise both from fact of incarceration and from valid penological objectives, including deterrence of crime, rehabilitation of prisoners and institutional security).

Even if the plethysmograph and polygraph examinations were compulsory, the Court would still balance plaintiff's liberty interest against the legitimate objectives of KDOC officials. *See, e.g., Kirkpatrick v. Simmons*, D. Kan. Case No. 96–3140–MLB, *Report And Recommendation* (Doc. # 25) at 8 (inmate's liberty interest in refusing treatment is not absolute but is qualified by correctional system's legitimate objectives of rehabilitation, safety and security) (citing *Harper*, 494 U.S. at 221, 110 S.Ct. 1028). In light of the foregoing analysis of plaintiff's free exercise claim, the Court concludes that the legitimate objectives of KDOC officials—i.e., rehabilitating convicted sex offenders and treating SATP participants equally—strike a fair balance with plaintiff's liberty interests. *See Pool*, 267 Kan. at 806, 987 P.2d at 1080; *Lile*, 24 F.Supp.2d at 1161–62. The Court therefore concludes that defendants are entitled to summary judgment on plaintiff's privacy and substantive due process claims.

## V. Procedural Due Process

The Fourteenth Amendment prohibits any State from depriving a person of life, liberty or property without due process of law. *Perkins v. Kansas Dep't. Of Corrections*, 165 F.3d 803, 808 (10th Cir.1999) (quoting *Meachum v. Fano*, 427 U.S. 215, 223, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976)). Plaintiff argues that defendants violated

his procedural due process rights by depriving him of personal property which he obtained while in prison. Plaintiff claims that defendants should have held a predeprivation hearing or stored the property at HCF until his release. Defendants argue that plaintiff received procedural due process because he received the opportunity to specify how his property should be removed from the facility, but he refused to do so.

▮ The Kansas Supreme Court has held that even if a prisoner no longer possesses property which he obtained during incarceration, he has not lost ownership of it and therefore "there [is] no taking sufficient to implicate due process." *Stansbury v. Hannigan*, 265 Kan. 404, 420, 960 P.2d 227, 238 (1998); *see Williams v. Meese*, 926 F.2d 994, 998 (10th Cir.1991) (although plaintiff no longer had possession of property, he still retained control over it and therefore had not been "deprived" of property); *Pryor–El v. Kelly*, 892 F.Supp. 261, 271 (D.D.C.1995) (inmate not deprived of property shipped to his home because he retained control over it). Plaintiff argues that these cases can be distinguished because in those cases the inmates actually chose to whom their personal belongings would be sent. The Court rejects the argument, however, that because plaintiff elected not to tell defendants where to send his property, defendants violated his constitutional rights by sending his property to his out-of-state relatives.[5] It is irrelevant that plaintiff does not expect the property to be returned to him. As long as plaintiff had a chance to say where the property would be sent, defendants satisfied procedural due process. Under state law, plaintiff

---

5. Plaintiff moves to strike defendants' statement that they sent his property to his out-of-state relatives "because" plaintiff did not designate a person to whom his property should be sent. *See Plaintiff's Surreply In Opposition To Defendants' Motion For Summary Judgment* (Doc. # 159) filed March 10, 2000. The Court overrules plaintiff's request as moot. The factual support for the casual connection

between plaintiff's refusal to sign the form and the shipment of his property is not critical to the analysis of plaintiff's procedural due process claim. Plaintiff concedes that he received the opportunity to specify how his property should be removed from the facility, but he refused to do so, and that defendants subsequently shipped his property to his out-of-state relatives.

retains title to the goods, regardless where defendants sent them and whether plaintiff expects to be reunited with them. Accordingly, the Court holds that defendants afforded plaintiff procedural due process because they gave him the opportunity to specify how his property would be removed and to whom it should be sent.

**IT IS THEREFORE ORDERED** that *Defendants' Motion For Summary Judgement Or In The Alternative Judgment On The Pleadings* (Doc. # 135) filed November 5, 1999, be and hereby is **SUSTAINED.**[6]

**IT IS FURTHER ORDERED** that *Plaintiff's Motion For Summary Judgement* (Doc. # 138) filed November 5, 1999, be and hereby is **OVERRULED.**

---

**6.** Because the Court sustains defendant's motion for summary judgment, it does not need to address defendants' alternative argument based on qualified immunity.